# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

ELIZABETH SULLIVAN      )
                                   )

    Plaintiff,            )
                                   )

      v.                 )     C.A. No: CPU4-21-004463
                                   )

JARAAD WATSON         )
                                   )

    Defendants.         )

Submitted: August 13, 2024
Decided: September 23, 2024

Elizabeth Sullivan,
500 Delaware Ave. Ste. 1
P.O. Box 1403
Wilmington, DE 19899
*Self-represented Plaintiff*

Jaraad Watson
1307 Radford Road
Wilmington, DE 19803
*Self-represented Defendant*

## DECISION AFTER TRIAL

**Danberg, C.J.**

Plaintiff Elizabeth Sullivan brings this action against her former landlord, Defendant Jaraad Watson, to recover for intentional torts allegedly committed by Mr. Watson and his agent/property manager, Darrell Stroy,[1] at the end of her tenancy and thereafter.

On August 13, 2024, the case proceeded to trial on Ms. Sullivan's claims for (1) slander, (2) malicious prosecution, and (3) abuse of process.[2] At trial, the Court heard testimony from one witness, Ms. Sullivan, and multiple documents were admitted into evidence.[3] At the conclusion of trial, the Court reserved decision. This is the Court's Final Decision After Trial.

## FACTUAL & PROCEDURAL CONTEXT

This is not the first legal dispute between Ms. Sullivan and Mr. Watson. Far from it; the parties share a long and tortuous history of litigation, much of which is

---

[1] Mr. Stroy was named as a defendant in this case, but the claims against him were adjudicated prior to trial. *See* Order granting default judgment as to Darrell Stroy, *Sullivan v. Watson*, 2023 WL 3487773, Ca. No. CPU4-21-004463, Surles, J. (June 23, 2022)(ORDER).

[2] Ms. Sullivan also brought a claim for harassment. However, on the day of trial, prior to the presentation of evidence, the Court dismissed Ms. Sullivan's harassment claim, as Delaware does not recognize a private civil cause of action for harassment. *Washington v. Talley*, 2017 WL 1201125, at *3 (Del. Com. Pl. Feb. 15, 2017); *McCambridge v. Bishop*, 2009 WL 3068915, at *3 (Del. Super. Sept. 23, 2009).

[3] Plaintiff's Exhibits 1-71, 13-17, 19-20, 22-27, and 29-32 were admitted into evidence. Plaintiff's Exhibit 23 was the audio recording from the April 8, 2021, hearing in the Justice of the Peace Court. Ms. Sullivan did not take steps necessary to obtain and enter the transcript from that hearing into evidence. However, exercising its discretion to afford leeway to *pro se* litigants, and considering that (i) Mr. Watson did not object to the evidence, and (ii) the audio recording was in the possession of the Court, the Court accepted the audio recoding into evidence as if it were presented to the Court.

intrinsic to the case at bar. For concision, only the facts and procedural history relevant to the issues raised at trial will be discussed herein.[4]

### a. The Landlord-Tenant Relationship and Initial Legal Proceedings

Ms. Sullivan rented a home from Mr. Watson (the "Property") from 2017 through June 2020, which was largely paid for through a Wilmington Housing Authority ("WHA") housing assistance program. The rental dealings between Ms. Sullivan and Mr. Watson were not aboveboard; although the parties were contractually precluded from charging or paying beyond the WHA-established rental rate, Mr. Watson charged—and Ms. Sullivan paid—an additional rental fee each month. This underhanded arrangement continued for more than two years, until the COVID-19 pandemic rendered Ms. Sullivan financially unable to pay the surplus rental fee.

The cessation of supplemental rental payments caused considerable tension between the parties. At some point, Ms. Sullivan learned that Mr. Watson told third-party acquaintances that he was going to "put that bitch [Ms. Sullivan] and her son out of my [Property]" (the "Eviction Comment"). Indeed, Mr. Watson seemed intent on doing just that. On December 22, 2020, Mr. Stroy, acting in his capacity as agent

---

[4] The Court incorporates the facts and procedural history from its Order on Damages as to Defendant Stroy, *Sullivan v. Watson*, 2023 WL 3487773, Ca. No. CPU4-21-004463, Surles, J. (May 16, 2023)(ORDER), and *Watson v. Sullivan*, Ca. No. CPU4-21-004447, Danberg, C.J. (Sept. 23, 2024)(ORDER).

3

for Mr. Watson,[5] filed a summary possession action in the Justice of the Peace Court to evict Ms. Sullivan and to recover unpaid rent (the "Summary Possession Action").[6] Notably, the claim for unpaid rent was for the WHA-prohibited surcharge, not the contractually agreed-upon monthly rental rate, which was not in arrears. The case proceeded to trial on April 5, 2021, and Mr. Watson testified as owner of the Property; however, the evidence adduced fell markedly short of the applicable burden of proof and, upon motion of Ms. Sullivan, the case was dismissed with prejudice.[7] Shortly thereafter, Ms. Sullivan notified Mr. Watson of her intent to vacate the Property by June 30, 2021.

### b. Litigation in the Court of Common Pleas

The disposition of the Summary Possession Action and Ms. Sullivan's vacating the Property did not mark the end of the parties' litigious engagement. Ms. Sullivan filed suit against Mr. Watson in the Justice of the Peace Court, asserting claims related to breach of the rental agreement; however, on December 27, 2021, following a trial and entry of judgment in favor of Ms. Sullivan, Mr. Watson appealed to this Court for a trial *de novo* (the "CCP Appeal"). A few days later, on

---

[5] In its April 15, 2020, Notice of Dismissal, the Magistrate explained that the issue of Mr. Stroy's standing to bring the suit was raised prior to commencement of trial, but the court reserved decision and proceed to trial "as it was aware the Owner [Mr. Watson] was present to testify." Pl. Ex. 5

[6] Pl. Ex.3, Pl. Ex.5.

[7] Pl. Ex. 5.

4

December 30, 2021, Ms. Sullivan filed the present cause of action against Mr. Watson and Mr. Stroy, asserting various intentional tort claims (the "Torts Case").

Both the CCP Appeal and the Torts Case were scheduled for trial on May 14, 2024. Noting the factual overlap between the matters, the parties elected to present their cases consecutively. The CCP Appeal was to proceed first and, for efficiency, the evidence presented would be incorporated in the Torts Case. While the intention was for both cases to be heard on the same day, time did not permit,[8] and the Torts Case was continued to August 13, 2024.

Court convened on August 13, 2024, for trial in the Torts Case. Prior to the commencement of trial, the Court reminded the parties that the evidence adduced in the CCP Appeal was incorporated into the Torts Case, thus the parties need not rehash facts already established.[9] Ms. Sullivan, the sole witness to testify at trial, recounted the housing-related challenges she faced in the years since she vacated the Property—challenges which she attributes to Mr. Watson. In fact, Ms. Sullivan has not be able to secure permanent housing since she vacated the Property in June 2020. To that end, she described one instance where her housing application was denied

---

[8] As in the Torts Case, the parties were both self-represented in the CCP Appeal, and their presentation of evidence took much longer than anticipated.

[9] Given the *pro se* parties' difficulty to present their claims and defenses in a clear and concise manner, the Court undertook to ensure that both parties understood their respective evidentiary burdens. As to Ms. Sullivan, the Court cautioned her prove each element of her claims, and confirmed that she understood each element. For example, on no less than five occasions, the Court reiterated to Ms. Sullivan the elements of malicious prosecution.

because Mr. Watson refused to respond to the prospective landlord when they reached out to him for a reference. In support of this claim, Ms. Sullivan introduced a letter from Woodlawn Trustees, the potential landlord (the "Letter").[10] Indeed, the Letter indicates a rental application could not be accepted "due to the unavailability to provide landlord reference history." Notably, the Letter is not addressed to Ms. Sullivan; rather, it is addressed to her son and her son's girlfriend. Ms. Sullivan explained that she, her son, and her son's girlfriend had all applied to rent a place together; however, she did not explain why her name was omitted from the Letter, and she did not produce any other documentation or testimony to support her contention that the non-responsive landlord referenced therein was *her* landlord, Mr. Watson.

Ms. Sullivan also described three instances at the core of her defamation claim. According to Ms. Sullivan, she and Mr. Watson attended the same gym, and certain individuals at the gym alerted her to Mr. Watson having made the Eviction Comment. Ms. Sullivan elaborated that she was "pretty sure" Mr. Watson made other slanderous statements, but the Eviction Comment was the only one she recalled at trial.

The two remaining defamatory statements identified by Ms. Sullivan occurred during the proceedings in this Court. Specifically, Ms. Sullivan took issue with Mr.

---

[10]   Pl. Ex. 26.

Watson's Response to Plaintiff's Motion to Amend which was filed in this case on June 25, 2024 (the "June 25th Filing"). In the June 25th Filing, Mr. Watson implied that Mr. Stroy and Ms. Sullivan had been in a relationship, which ended when Mr. Stroy returned to his wife.[11] Ms. Sullivan also pointed to comments made by Mr. Watson during his testimony at the May 14, 2024, trial in the CCP Appeal. Specifically, Ms. Sullivan claimed that Mr. Watson insinuated that she had been romantically involved with Mr. Stroy (the "May 14th Testimony").

## DISCUSSION

Both parties in this matter appeared *pro se*, which presents challenges as the Court balances the need to afford leniency so that the case is considered on its merits, with the obligation to maintain neutrality.[12] Indeed, both parties were hindered by their lack of understanding of certain rules and legal principals. However, mindful of the protracted history of litigation and the need for full and fair resolution of the

---

[11] Although the term "affair" was notably missing from Mr. Watson's statements, Ms. Sullivan was insistant that Mr. Watson had claimed that she and Mr. Stroy engaged in an affair.

[12] *See Durham v. Grapetree, LLC,* 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014)(affording leeway to the *pro se* plaintiff "to allow the matter to be determined on its merits")(quoting *Jackson v. Unemployment Ins. Appeal Bd.,* 1986 WL 11546, at *2 (Del.Super.Sept. 24, 1986)); *Lanciotti v. Shore Properties Maintenance,* 1995 WL 1582030, at *2 (Del. Com. Pl. Nov. 28, 1995)(noting that the court cannot be a resource to help *pro se* litigants who find court rules to be difficult to understand because the court must maintain neutrality); *Dickens v. Costello,* 2004 WL 396377, at *1 (Del.Super.Feb.23, 2004) ("Because the Plaintiff is acting *pro se*, the Court will attempt to unearth the merits of his most recent motion"); *Zhai v. Stein,* 2012 WL 1409358, at * (Del. Super. Jan. 6, 2012)("This Court will accommodate [a *pro se* litigant] only to the extent that the substantive rights of the opposing party are not affected").

issues raised, the Court endeavored to unearth the factual and legal bases of each of Ms. Sullivan's claims without impinging the substantive rights of Mr. Watson.[13]

## I.   Malicious Prosecution

To prevail on a claim for malicious prosecution, it is incumbent on the plaintiff to prove, by a preponderance of the evidence: (1) the institution of civil proceedings; (2) brought by or at the behest of the defendant; (3) without probable cause; (4) with malice; (5) the proceedings terminated in favor of the plaintiff; and (6) damages inflicted by seizure of property or other special injury.[14]   Notably, malicious prosecution claims are disfavored by Delaware courts, and are thus "assessed with careful scrutiny."[15]

At the core of Ms. Sullivan's malicious prosecution claim is the Summary Possession Action.   The Court is satisfied that Ms. Sullivan demonstrated, by a preponderance of the evidence, that the Summary Possession action was instituted at the instance Mr. Watson, that it lacked probable cause, and that the proceedings terminated in favor of Ms. Sullivan.   However, the viability of Ms. Sullivan's malicious prosecution claim begins to waver at the element of malice.

---

[13]   *See supra* n. 9.

[14]   *Smith v. Delaware State Police*, 2014 WL 3360173, at *4 (Del. Super. July 8, 2014); *Winshall v. Viacom International, Inc.*, 2019 WL 960213, at *15 (Del. Super. Feb. 25, 2019).

[15]   *Ferguson v. Wesley College, Inc.*, 2000 WL 706833, at *2 (Del. Super. March 23, 2000);.*McMahon v. McMahon*, 2024 WL 1905462, at *2 (Del. Super. April 29, 2024).

At trial, Ms. Sullivan was adamant in her belief that "the filing of the lawsuit in the first place was the malice." The Court finds that argument to be untenable, for if the act of instituting a proceeding was, in and of itself, demonstrative of malice, then malice would not be a discrete element of the claim. Further, Delaware law is clear that a showing of malice requires more than bare allegations of hostile intent;[16] rather, it calls for "evidence that the action was taken by the defendant with a wrongful or improper motive or with wanton disregard of the plaintiff's rights."[17] "Actual spite, ill will or a grudge do not necessarily establish malice."[18]

Ms. Sullivan failed to point to any specific facts to demonstrate malice.[19] At best, the facts demonstrate that Mr. Watson was greedy in that he wanted to continue collecting the supplemental rental payments despite the WHA's prohibition. However, the parties' years-long practice of imposing/paying the rental surplus allays the inference that Mr. Watson's efforts to continue the practice was an act of malice. Moreover, even if malice could be inferred, Ms. Sullivan's malicious

---

[16] *Spence v. Spence*, 2012 WL 1495324, at *2 (Del. Super. April 20, 2012)("a bare allegation that the defendant instituted "proceedings solely to intimidate and harass is insufficient" to plead malice" and "the addition of the incidental fact that the defendant felt indignation or resentment toward the plaintiff does not make the defendant liable").

[17] *Scott v. Moffit*, 2019 WL 3976068, at *6 (Del. Super. Aug. 20, 2019).

[18] *Sekscinski v. Harris*, 2006 WL 509541, at *2 (Del. Super. Jan. 18, 2006).

[19] At best, the facts demonstrate that Mr. Watson was greedy in that he sought to continue to collect the rental surplus despite the WHA's prohibition. However, the parties' years-long practice of imposing/paying the rental surplus allays the inference that Mr. Watson's efforts to continue the practice was inherently malicious.

prosecution claim must fail because she did not adduce any evidence as to the element of damages.

Although difficult to pinpoint, it appears that the damages Ms. Sullivan claims to have suffered as a result of the Summary Possession Action relate to expenses she incurred when she vacated the Property and could not secure new housing, including the cost of placing her personal property in storage. However, the Summary Possession Action did not render Ms. Sullivan unhoused, for it did not result in her eviction. Rather, Ms. Sullivan continued to live at the Property well after the case was terminated in her favor, and she ultimately moved out on her own volition. To the extent that Ms. Sullivan believes that her inability to secure new housing after she chose to leave the Property is attributable to the Summary Possession Action, such causal nexus was not established at trial. In fact, Ms. Sullivan actually seems to be claiming the root of her problems finding housing are attributable to Mr. Watson's actions separate and apart from the Summary Possession Action, in that she claims he would not respond to requests for a landlord reference.

In all, Ms. Sullivan failed to prove *any* damage consequent to the Summary Possession Action, much less damages amounting to seizure of property or special

injury as required to recover for malicious prosecution.[20] Accordingly, Ms. Sullivan cannot prevail on her malicious prosecution claim.

## II. Abuse of Process

"Unlike malicious prosecution claims, which focus on a party's initiation of the legal process, abuse of process concerns perversions of the legal process after it has been issued."[21] To recover for abuse of process, the plaintiff must prove two elements: (1) an ulterior purpose, and (2) a willful act in the use of the legal process that is not proper in the regular conduct of proceedings.[22] To sustain an abuse of process claim, the plaintiff must demonstrate "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."[23] "Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown; in other words, a form of extortion is required."[24]

Ms. Sullivan's position at trial was that Mr. Watson "weaponized the courts" against her by initiating the Summary Possession Action. However, the initiation of the Summary Possession Action cannot satisfy her burden; she must allege and prove

---

[20] *Nix v. Sawyer*, 466 A.2d 407, 411 (Del. Super. July 21, 1983). To the extent that Ms. Sullivan intended her generalized claims of reputational harm to be construed as the damages she suffered, such harm does not satisfy the damages element. *Batchelor v. Alexis Properties, LLC*, 2018 WL 1611662, at *2 (Del. Super. April 3, 2018).

[21] *Dayton v. Collision*, 2020 WL 3412701, at *14 (Del. Super. June 22, 2020).

[22] *Id.*

[23] *Adams v. Aidoo*, 2012 WL 1408878, at *9 (Del. Super. Mar. 29, 2012).

[24] *Dayton*, at *14.

11

some additional action beyond the filing of the suit—some action taken during the proceedings—to satisfy her burden. Ms. Sullivan failed to articulate any such improper action. As such, Ms. Sullivan failed to satisfy her burden of proof with regards to her abuse of process claim.

## III. Defamation

Ms. Sullivan identified three communications made by Mr. Watson that serve as the bases of her defamation claim: (i) the Eviction Comment; (ii) the June 25th Filing, and; (iii) the May 14th Testimony. However, the June 25th Filing and the May 14th Testimony occurred years after the complaint in this matter was filed; as such, those statements cannot serve as the basis of Ms. Sullivan's defamation claim. Thus, the Court will consider only the Eviction Comment as the basis of Ms. Sullivan's defamation claim.

To recover for defamation under Delaware law, the plaintiff must prove, by a preponderance of the evidence: (1) a defamatory statement; (2) the statement refers to the plaintiff (3) the statement was published; (4) a third party would understand the statement to be defamatory; and (5) injury.[25] Generally, oral defamation (i.e., slander) is not actionable without special damages.[26] "Special damages" means "loss of something having economic or pecuniary value."[27]

---

[25] *Read v. Carpenter*, 1995 WL 945544, at *2 (Del.Super. June 8, 1995).
[26] *Id.*
[27] *Preston Hollow Capital LLC v. Nuveen LLC*, 2022 WL 2276599, at *3 (Del. Super. June 14, 2022).

First, the Court must consider whether the Eviction Statement was defamatory in nature. Whether a statement is defamatory is a question of law; it requires the Court to consider whether the statement constitutes "expressions of fact or protected expressions of opinion," and whether the statement is "capable of a defamatory meaning."[28] Additionally, Delaware law does not impose liability for a statement that is substantially true.[29] The Court finds that the Eviction Statement was not defamatory in nature. It was a statement of Mr. Watson's intent to remove Ms. Sullivan from the Property—an intent which he actively pursued, thereby actualizing the statement's truth.[30] Therefore, as a matter of law, Mr. Watson cannot be held liable for the Eviction Statement.

Furthermore, Ms. Sullivan failed to satisfy her burden of demonstrating injury consequent to any alleged defamatory statement. Like her malicious prosecution claim, Ms. Sullivan seemingly points to her inability to secure new housing, and expenses she incurred due to her lack of housing, as the injury she sustained from the alleged defamation. However, Ms. Sullivan never identified a single statement that Mr. Watson made to any prospective landlord that defamed her character. To

---

[28] *Id.*

[29] *Riley v. Moyed*, 529 A.2d 248, 253 (Del. Supr. 1987); *Giove v. Holden*, 2014 WL 975135, at *5 (D. Del. 2014)

[30] To the extent that Ms. Sullivan takes issue with Mr. Watson's referring to her as a "bitch," it is clear from the evidence that such statement, although crude, was an expression of pure opinion, and thus cannot serve as a basis to impose liability upon Mr. Watson. *Grimaldi v. New Castle County*, 2016 WL 4411329, at *8 (Del. Super. Aug. 18, 2016)("Pure expressions of opinion are protected under the First Amendment and are not defamatory").

the contrary, the only allegation regarding Mr. Watson's communications with prospective landlords was that he refused to communicate at all.[31]  Accordingly, Ms. Sullivan failed to satisfy her burden of proof with regards to her defamation claim.

## CONCLUSION

For the reasons set forth above, the Court finds that Ms. Sullivan failed to satisfy her burden of proof with regards to her malicious prosecution, abuse of process, and defamation claims.  Therefore, **judgment is entered in favor of Mr. Watson**.  Each party shall bear its own costs.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg,
Chief Judge

---

[31]  To the extent that Ms. Sullivan seeks to construe Mr. Watson's alleged refusal to provide a reference as defamation, this Court is not aware of any Delaware case to support the proposition that a landlord's refusal to provide any reference constitutes defamation.  Moreover, for the reasons explained *supra*, the Court declines to find that Ms. Sullivan demonstrated that Mr. Watson did, in fact, refuse to communicate with her prospective landlord.